IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 12-0056-WS |
| ) | |
| LORENZO TAYLOR, JR. etc., et al., ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on the motion of defendant Lorenzo Taylor, Jr. to dismiss four counts of the superseding indictment, (Doc. 59), in which motion co-defendants Ryan E. Williams and Reginald M. Robinson have joined. (Docs. 61, 63). The motion supersedes the defendants' motion to dismiss four counts of the original indictment, (Doc. 39), although that document continues to function as their brief. The government has filed a response, (Doc. 50), the defendants declined to file a reply, (Doc. 42), and the motion is ripe for resolution.

## BACKGROUND

The superseding indictment charges varying combinations of the defendants with four counts of violating 18 U.S.C. § 1201(a)(1). (Doc. 46). That statute provides in pertinent part as follows:

> Whoever unlawfully … kidnaps … any person …, when … the offender … *uses the mail or any means, facility, or instrumentality of interstate ... commerce in committing or in furtherance of the commission of the offense* … shall be punished [as provided].

The italicized language was added by the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). The defendants argue that Section 1201(a)(1), as amended by the Act, is facially unconstitutional as exceeding Congress' authority under the Commerce Clause. In the alternative, they argue that the statute is unconstitutional as applied to them.

## DISCUSSION

> [W]e have identified three broad categories of activity that Congress may regulate under its commerce power. … First, Congress may regulate the use of the channels of interstate commerce. … Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. … Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, …, *i.e.*, those activities that substantially affect interstate commerce.

*United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (citations omitted).

With respect to the second category, "[p]lainly, congressional power to regulate the … instrumentalities of commerce includes the power to prohibit their use for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature." *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) (en banc). Again, "[t]hese precedents [of the Supreme Court] leave no doubt that the commerce power contemplates congressional regulation of the channels and instrumentalities of commerce in order to prevent their use to facilitate harmful acts, which may be consummated – and whose effects ultimately may be felt – outside the flow of commerce." *Id*. at 1228.

The superseding indictment charges that, as to each kidnapping count, the defendants used a cell phone in furtherance of the commission of the offense. "Telephones and cellular telephones are instrumentalities of interstate commerce." *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007); *accord Ballinger*, 395 F.3d at 1226. This is so "even without evidence that the calls [the defendants] made were routed through an interstate system." *Evans*, 476 F.3d at 1181; *accord United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) ("Even if none of Faris' communications were routed over state lines, the internet and telephone he used to contact the undercover officer were still instrumentalities of interstate commerce.") (internal quotes omitted).

Analyzed under the second *Lopez* category, it is clear that Section 1201(a)(1) represents a constitutional exercise of Congress' power under the Commerce Clause, since it prohibits the use of an instrumentality of interstate commerce for the harmful purpose of furthering a kidnapping. Although no known appellate decision has addressed the constitutionality of Section 1201(a)(1) as amended by the Act, the three trial court opinions known to have done so have all reached the same conclusion. *United States v. Jacques*, 2011 WL 1706765 at *10-11 (D. Vt. 2011); *United States v. Augustin*, 2010 WL 2639966 at *4 (E.D. Tenn. 2010); *United States v. Ochoa*, 2009 WL 3878520 at *2-3 (D.N.M. 2009).

The defendants acknowledge that, if evaluated under the second *Lopez* category, their facial challenge must fail. They insist, however, that Section 1201(a)(1) is properly analyzed only under the third category of *Lopez*. This is so, they say, because the statute "does not represent an effort by Congress to regulate the instrumentalities of interstate commerce." (Doc. 39 at 2 (internal quotes omitted)). According to the defendants, the second *Lopez* category is in play only when the statute "directly regulates" the instrumentalities of interstate commerce, which occurs only when Congress "enacts statutes which specifically criminalize the use of that instrumentality to carry-out another specific crime." (*Id*. at 35). When a statute "regulates criminal activity," they insist, it must stand or fall under the third *Lopez* category, regardless of any "jurisdictional hook" regarding use of the instrumentalities of interstate commerce. (*Id*. at 42).

The defendants cite no case which actually articulates and adopts the proposition that – *Ballinger*'s plain language to the contrary notwithstanding – a statute explicitly prohibiting the use of instrumentalities of interstate commerce for a harmful intrastate purpose may not be a proper exercise of Commerce Clause power under the second *Lopez* category. They appear to be merely parroting a similar argument raised and rejected in *Jacques*. 2011 WL 1706765 at *8.

The defendants identify a single statute they believe would satisfy their proposed "directly regulates" test. (Doc. 39 at 36-37). Under 21 U.S.C. § 843(b), "[i]t shall be

unlawful … to use any communication facility in committing or in causing or facilitating the commission of any act constituting a felony under" certain drug statutes. The defendants conclude that this statute criminalizes the use of an instrumentality of interstate commerce for a particular bad purpose and so directly regulates the instrumentality. In contrast, they say, are statutes that criminalize the bad purpose so long as an instrumentality of interstate commerce is employed in furtherance of the bad purpose. In such cases, Congress is invoking the instrumentality merely as a jurisdictional hook and is directly regulating only the bad purpose, not the use of the instrumentality. (Doc. 39 at 42).

The defendants' proposed distinction is facially illusory. Under either sort of statute, the existence of a federal crime requires both a bad purpose and the utilization of an instrumentality of interstate commerce to further the bad purpose. Under one, Congress makes it a crime to use such an instrumentality to effect the bad purpose, and under the other Congress makes it a crime to effect the bad purpose by using the instrumentality. If there is more than an empty semantic distinction between these formulations, the defendants have not isolated it. Under either, Congress is "prohibit[ing] their use [that of instrumentalities of interstate commerce] for harmful purposes." *Ballinger*, 395 F.3d at 1226. Indeed, the *Ballinger* Court dismissed as "formalistic" the defendant's suggestion – indistinguishable from that of the defendants herein – that "Congress can only proscribe travel in commerce to commit a crime, not the crime itself." *Id*. at 1230 n.7.

Even were it theoretically possible for the defendants' proposed distinction to be a legally significant one, its adoption by this Court would be foreclosed by Eleventh Circuit precedent upholding, under the second *Lopez* category, criminal statutes whose invocation of the instrumentalities of interstate commerce is functionally indistinguishable from that contained in Section 1201(a)(1).

"Whoever, using the mail or any facility or means of interstate … commerce … knowingly persuades, induces, entices, or coerces any individual who has not attained the

age of 18 years, to engage in prostitution …, shall be [punished as provided]." 18 U.S.C. § 2422(b). Even though this reference to the instrumentalities of interstate commerce is, in the defendants' terminology, a "jurisdictional hook" rather than the target of the statute, the provision is constitutional under the second *Lopez* category. *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004).

"Whoever, in any of the circumstances referred to in subsection (b) of this section … intentionally defaces, damages, or destroys any religious real property, because of the religious character of that property, … shall be punished [as provided]." 18 U.S.C. § 247(a). "The circumstances referred to in subsection (a) are that the offense is in or affects interstate or foreign commerce." *Id*. § 247(b). Though a mere "jurisdictional hook" in the defendants' conception, this provision is constitutional under the second *Lopez* category since "Congress' commerce authority includes the power to punish a church arsonist who uses the channels and instrumentalities of interstate commerce to commit his offenses." *Ballinger*, 395 F.3d at 1230.

The *Ballinger* Court identified a full dozen criminal statutes "prohibit[ing] movement through the channels of commerce and/or use of the instrumentalities of commerce for various purposes," which statutes "clearly illustrate Congress' power to punish offenders like Ballinger, who rely on the channels and instrumentalities of commerce in committing criminal acts," 395 F.3d at 1229, even though at least some of these statutes do not "actually focus on the travel rather than on the offense." *Id*. at 1230 n.7.

For example, "[w]hoever takes … from the person or presence of another by force or violence or by intimidation any … controlled substance … shall be [punished as provided], if … (2) the person who engaged in such taking ... used any facility in interstate … commerce to facilitate such taking …." 18 U.S.C. § 2118(a). "Plainly, this provision is worded to focus on punishing the act of taking property, not the travel in or use of a facility of interstate commerce," *Ballinger*, 395 F.3d at 1230 n.7, yet this statute "clearly illustrate[s] Congress' power to punish offenders … who rely on the channels

and instrumentalities of commerce in committing criminal acts." *Id*. at 1229.  Section 1201(a)(1) precisely parallels Section 2118(a), and the former statute cannot possibly exceed Congress' power in light of the en banc Court's acknowledgment that the latter does not.

As a separate basis of their facial attack, the defendants note that "Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States" and that, "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance." *United States v. Bass*, 404 U.S. 336, 349 (1971).  They continue that Section 1201(a)(1) works a "dramatic upset of the federal-state balance regarding kidnapping jurisdiction" but that the Act and its legislative history "offered no rationale" for doing so, which silence furnishes independent grounds for declaring the statute unconstitutional.  (Doc. 39 at 2-3).

The defendants misapprehend *Bass*, which involved a statute "ambiguous in the critical respect" of whether the term "receives, possesses, or transports in commerce or affecting commerce" required a nexus with commerce in cases involving receipt and possession as well as those involving transportation or only in cases involving transportation.  404 U.S. at 338-39.  The Court resolved the ambiguity by adopting the former reading based on "two wise principles this Court has long followed," including that relied upon by the defendants herein.  *Id*. at 347-50.  Absent ambiguity in the statute, then, *Bass* does not apply.  *See also Jones v. United States*, 529 U.S. 848, 858-59 (2000) (invoking *Bass* in construing an ambiguous statute); *cf. Polycarpe v. E&S Landscaping Service, Inc.*, 616 F.3d 1217, 1224 (11th Cir. 2010) ("We do not rely on legislative history at all when a statutory text is unambiguous or manifests some plain meaning."); *United States v. Trainor*, 376 F.3d 1325, 1330 n.2 (11th Cir. 2004) (same).

There is not the slightest whiff of ambiguity as to whether Section 1201(a)(1) extends federal jurisdiction over kidnappings to those in which the offender uses an instrumentality of interstate commerce to commit or further the commission of the

offense – it patently does so, and the defendants do not argue otherwise.  It is therefore immaterial whether Congress, in the Act or in its legislative history, explicitly acknowledged that, yes, it realized the Act would expand federal jurisdiction over kidnappings.  Differently expressed, the statutory language itself clearly conveys Congress' purpose to expand federal jurisdiction over kidnappings.

Because Section 1201(a)(1) represents a constitutional employment of Commerce Clause power under the second *Lopez* category, it is irrelevant whether it would also survive scrutiny under the third category.  *Ballinger*, 395 F.3d at 1227 ("We need not and do not reach the question of whether § 247 constitutes a permissible regulation under the third *Lopez* prong of activity *affecting* commerce, since the statute falls squarely within Congress' power under the first two *Lopez* prongs to regulate the *channels* and *instrumentalities* of commerce.") (footnote omitted, emphasis in original).

In support of their as-applied challenge, the defendants argue that Section 1201(a)(1) requires that their use of cell phones facilitate the kidnappings and that the government will be unable to show that their use of cell phones facilitated the kidnappings as opposed to facilitating only their robberies of drug dealers.  (Doc. 39 at 47-48).  Thus, "the facts of this case do not bring it within the statute's reach."  (*Id*. at 3).  This is not a challenge to the constitutionality of the statute at all but only to the government's ability to prove its case under the defendants' construction of the statute.

"There is no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."  *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (internal quotes omitted).  Instead, "[a] motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases …."  *Id*.  Resolution of the defendants' challenge thus must await trial.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is **denied**.

DONE and ORDERED this 13th day of August, 2012.

                                    s/ WILLIAM H. STEELE
                                    CHIEF UNITED STATES DISTRICT JUDGE