# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 12-0056-WS |
| ) | |
| LORENZO TAYLOR, JR., ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

This matter is before the Court on the defendant's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. 286).

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ….

18 U.S.C. § 3582(c)(1)(A).

Relief under this provision, known as "compassionate release," thus requires satisfaction of four elements:  (1) a proper motion; (2) a finding that extraordinary and compelling reasons for such relief exist; (3) a finding of consistency with Sentencing Commission policy statements; and (4) favorable consideration of the Section 3553(a) factors.

**I. Proper Motion.**

The defendant has shown that he presented a request for compassionate release to his warden more than 30 days before filing the instant motion. (Doc. 286-3). However, the defendant presented only two grounds to the warden: (1) his mother's illness; and (2) the vacatur of a "co-defendant's" sentence. (*Id*. at 1). The Court agrees with the Seventh Circuit that, "in order properly to exhaust, an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau [of Prisons] as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021).[1] The defendant therefore has not exhausted the other grounds for relief that he raises in the instant motion.

The exhaustion requirement is not jurisdictional, and insistence on its satisfaction may be forfeited by the government's failure to object. *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021). Because it is resolving this motion without requiring a response, the Court does not know whether the government would waive the exhaustion requirement. The Court therefore assumes for present purposes that the government would do so.

---

[1] A small sample of lower courts reaching a similar conclusion would include: *United States v. Johnson*, 619 F. Supp. 3d 81, 88 (D.D.C. 2022); *United States v. Cooley*, 2023 WL 4669429 at *3 (M.D. Fla. 2023); *United States v. Morfin-Rios*, 2023 WL 4355341 at *2 (S.D. Cal. 2023); *United States v. Slay*, 2023 WL 2493797 at *3 (W.D.N.Y. 2023); *United States v. Hartwell*, 2022 WL 2161047 at *2 (E.D. Va. 2022); *United States v. Anderson*, 2022 WL 464558 at *1 (S.D. Ga. 2022); *United States v. Narez*, 2021 WL 5566787 at *4 (E.D. Cal. 2021); *United States v. Pierre*, 2021 WL 3509685 at *3 (E.D. La. 2021); *United States v. Winston*, 2021 WL 274484 at *1 (D. Kan. 2021); *United States v. Dodd*, 2020 WL 7396527 at *2 (E.D. Tex. 2020); *United States v. Silcox*, 2020 WL 4341758 at *2 (E.D. Tenn. 2020); *United States v. Knight*, 2020 WL 4059886 at *2 (M.D.N.C. 2020); and *United States v. Mogavero*, 2020 WL 1853754 at *2 (D. Nev. 2020). This Court has previously reached the same conclusion. *United States v. Young*, 2022 WL 1487389 at *2 (S.D. Ala. 2022).

## II. Extraordinary and Compelling Reasons.

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission has done so. U.S.S.G. 1B1.13. The extraordinary and compelling reasons listed therein are the only ones that can support compassionate release, and district courts lack power to develop others. *United States v. Bryant*, 996 F.3d 1243, 1247-48, 1264-65 (11th Cir. 2021).

### A. Medical Circumstances.

An extraordinary and compelling reason for a reduced sentence exists if the defendant is "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility …." U.S.S.G. § 1B1.13(b)(1)(B). The defendant states generally that he has "degenerative disc disorder." (Doc. 286 at 4). Without providing any information or medical records, the defendant checks a box on a form to claim that this condition "substantially diminishes my ability to provide self-care within the environment of a correctional facility." (*Id*.). However, the defendant elsewhere confirms that he is prescribed no medication for this condition; that he requires no wheelchair or walker; and that he requires neither assisted living nor any assistance with self-care such as bathing, walking, and toileting. (Doc. 286-2 at 3). These precise concessions directly and fatally contradict the defendant's generalized *ipse dixit* that his ability to care for himself in prison is substantially diminished. *E.g., United States v. White*, 2022 WL 3698371 at *2 (11th Cir. 2022); *United States v. Keys*, 2021 WL 3012657 at *3 (11th Cir. 2021).

### B. Family Circumstances.

An extraordinary and compelling reason for a reduced sentence arises upon "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). The defendant asserts that his mother has advanced COPD, that her lungs are at 40%, that she needs breathing treatment, and that she needs the aid of oxygen to move around. (Doc. 286 at 13). Sister courts have construed "incapacitation" to mean the relative is completely disabled, is unable to carry on any self-care, and is confined to a bed or chair. *United States v. Saunders*, 2022 WL 5200055 at *1 (S.D. Ga.

2022); *United States v. Jordan*, 2020 WL 1640097 at *3 (M.D. Fla. 2020). The defendant's mother does not meet this standard, since she continues to go shopping despite having no caregiver. (Doc. 286 at 13). In addition, although the defendant declares that he is the only available caregiver because his brother died in 2016, (*id.*), he does not account for his two sisters, (Doc. 223 at 29), or for his wife, with whom the defendant intends to live upon his release. (Doc. 286-1 at 2).

    C. **Change in the Law.**

An extraordinary and compelling reason for a reduced sentence may be found to exist, "after full consideration of the defendant's individualized circumstances," if the defendant "received an unusually long sentence[,] has served at least 10 years of the term of imprisonment[, and] a change in the law … would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). The defendant proposes several such changes.

The defendant pleaded guilty to Counts One, Three, and Four of the second superseding indictment. (Docs. 191, 197, 202). Count One charged the defendant with conspiracy to use and carry a firearm in furtherance of, and to possess a firearm in connection with, a drug trafficking felony, in violation of 18 U.S.C. § 924(o). Count Three charged the defendant with kidnapping, in violation of 18 U.S.C. § 1201(a)(1) and (g). Count Four charged the defendant with using, carrying, brandishing, and discharging firearms during and in relation to a drug trafficking felony and possessing, brandishing, and discharging firearms in furtherance of the drug trafficking felony, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Doc. 191 at 1-8). The Court sentenced the defendant to 360 months on Count Three. (Doc. 232 at 2). The Court sentenced the defendant to 240 months on Count One, to run concurrent with Count Three, and to 120 months on Count Four, to run consecutive to Count One. (*Id.*).

The Court assumes for argument that the 360-month sentence on Count Three constitutes an "unusually long sentence" under Section 1B1.13(b)(6). The Court further assumes for argument that the 360-month sentence on Counts One plus Four constitutes an unusually long sentence within the contemplation of the guideline. The defendant was sentenced in October 2015 but, because the Court ordered that he "be given credit for time served while in federal custody," (Doc. 232 at 2), which custody began in March 2012, (Doc. 223 at 1), the Court

assumes for argument that he has served at least ten years of his term of imprisonment for purposes of Section 1B1.13(b)(6).

According to the defendant, the First Step Act worked a change in the law by prohibiting the "stacking" of a Section 924(c) sentence on top of a Section 924(o) sentence. (Doc. 286 at 9). The First Step Act, however, did not address this situation. Instead, the Act reworded Section 924(c)(1)(C) to prevent multiple Section 924(c) sentences arising from the same prosecution from being stacked on each other. *E.g., United States v. Griffin*, 859 Fed. Appx. 359, 360 (11th Cir. 2021). As the Court has previously advised the defendant, (Doc. 253 at 6), Section 924(c) explicitly requires that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person," and this "[n]otwithstanding any other provision of law." 18 U.S.C. § 924(c)(1)(D)(ii). The quoted language, which remains unchanged to this day, continues to compel the consecutive sentences the defendant received; there has been no change in the law.

The defendant also invokes changes made by the First Step Act to mandatory minimum sentences for some controlled substance offenses under Title 21. (Doc. 286 at 10). Those changes are real, but the defendant was not convicted of, or sentenced for, any crime under Title 21.

Finally, the defendant argues that his convictions under Counts One and Four are no longer valid, based on the reasoning of *Robinson v. United States*, 2019 WL 4855161 (S.D. Ala. 2019). (Doc. 286 at 6, 8). In *Robinson*, the defendant pleaded guilty to a violation of Section 924(o), a violation of Section 1201(a)(1), and a violation of Section 924(c)(1)(A)(ii).[2] On an authorized second motion to vacate, the defendant successfully argued that his Section 924 convictions could not stand in light of *United States v. Davis*, 139 S. Ct. 2319 (2019). *Robinson*, 2019 WL 4855161 at *6-7. The defendant assumes that the same result must apply here, but it does not. Sections 924(c) and 924(o) make it unlawful to have certain associations between a firearm and either a "crime of violence" or a "drug trafficking crime." The *Davis* Court ruled that the statutory residual definition of "crime of violence" was unconstitutionally vague, and the

---

[2] The defendant describes the defendant in *Robinson* as his "alleged co-defendant," (Doc. 286 at 6, 8), but they were prosecuted in different actions for different, though similar, crimes.

*Robinson* Court ruled that kidnapping does not satisfy the alternate, elements definition of a crime of violence. These cases have no relevance here, because the defendant was convicted of violating Sections 924(c) and 924(o) due to the relationship between a firearm and a "drug trafficking crime." (Doc. 191 at 1, 7-8; Doc. 197 at 1-2; Doc. 232 at 1). The Court has previously explained this to the defendant. (Doc. 253 at 6).

### D. Other Reasons.

An extraordinary and compelling reason for a reduced sentence may be found to exist if the defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [addressing age of the defendant, his medical circumstances, family circumstances, and status as a victim of abuse] are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The defendant repackages his subsection (b)(6) argument based on *Robinson* for purposes of subsection (b)(5). (Doc. 286 at 8). The guidelines prohibit such a tactic: "Except as provided in subsection (b)(6), a change in the law … shall not be considered for purposes of determining whether an extraordinary and compelling reason exists …." U.S.S.G. § 1B1.13(c).

To the uncertain extent the defendant intends to suggest that the mere fact of a disparity between his sentence and that of the defendant in *Robinson* supports a sentence reduction in his case, he is mistaken. First, there is very little disparity between the sentences handed down. Both defendants received a 240-month sentence on the Section 924(o) charge. Both defendants received a consecutive sentence on the Section 924(c) charge. The defendant's sentence on the Section 924(c) charge was 120 months while the *Robinson* defendant's sentence on that charge was 84 months, but that difference was dictated by the statute itself, since the defendant discharged his firearm and the *Robinson* defendant did not. 18 U.S.C. § 924(c)(1)(A)(ii), (iii). The post-*Davis* disparity in sentence is not unwarranted because, as noted above, the two defendants were charged with different crimes, and only the *Robinson* defendant's crime has been affected by *Davis*.

Although rehabilitation by itself cannot establish an extraordinary and compelling reason for a reduced sentence, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether … a reduction in the

defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).  The defendant asserts that his rehabilitation is "extraordinary," (Doc. 286 at 11), but the Court cannot on this record agree.  While the defendant has apparently completed a substantial number of classes, (*id*. at 12), he acknowledges that only over "the past few years" has his disciplinary record been free of any "meaningful infractions." (*Id*. at 11).  Notably, the defendant offers no testimonials from disinterested third parties attesting to his rehabilitation.  The Court commends all rehabilitative efforts and encourages the defendant to continue them, but neither alone nor in combination with his other proffered reasons do they support the existence of an extraordinary and compelling reason to reduce his sentence.

### III. Policy Statements.

Even when extraordinary and compelling reasons for a sentence reduction exist, relief is statutorily prohibited unless the Court finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission …." 18 U.S.C. § 3582(c)(1)(A).  The Commission's policy statement includes the requirement that "the court determin[e] that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2).  On the present record, the Court cannot make this necessary determination.

The defendant admitted the allegations of Count One. (Doc. 197 at 1).  He has therefore admitted the following:  that, for a two-year period from mid-2009 to mid-2011, he was a member of a conspiracy the object of which was to forcibly enter premises and, while brandishing firearms, threaten bodily injury and death for failure to provide drugs or money in accordance with the conspirators' demands; that, in November 2009, he jumped a victim and her minor child, restrained them with duct tape, demanded money and drugs of them at gunpoint, and forced them into a vehicle in an effort to find additional victims; that, in February 2010, he broke into a residence, brandished a firearm at the owner, and stole cash from the residence; that, in July 2010, he forcibly entered a residence, tied up the residents then at the home, brandished a firearm while threatening them with bodily injury and demanding drugs and money, stole drugs and money, then confronted another resident when he appeared and demanded drugs and money on threat of inflicting bodily harm on the other residents, removed this resident from the home, and intentionally killed him as he attempted to flee; and that, in May 2011, he jumped a victim

outside his residence, displayed firearms and demanded money, and forced him and a second victim into a vehicle at gunpoint to go to the residence of another victim, whom he jumped and from whom he demanded drugs and money at gunpoint. (Doc. 191 at 1-6).

The defendant also admitted the allegations of Counts Three and Four. (Doc. 197 at 1). He has therefore admitted that he kidnapped the minor in November 2009 and that he murdered the victim in July 2010. (Doc. 191 at 7-8).

This heinous, extended crime spree was not an isolated occurrence. In November 1996, the armed defendant participated in a carjacking, resulting in his plea of guilty to a federal charge of armed robbery of an automobile. (Doc. 223 at 24). In June 1997, the armed defendant participated in another carjacking, resulting in his plea of guilty to federal charges of armed robbery of an automobile and use of a firearm during a crime of violence. (*Id*. at 24-25). In August 1998, the defendant participated in yet another carjacking and shot the victim in the leg as he tried to escape, resulting in his plea of guilty to state charges of robbery second and assault first. (Doc. 223 at 23).

Nor has the defendant remained free of violent crime for any appreciable period of time outside the prison environment. The defendant was arrested on the federal charges described above in December 1998 and remained in custody thereafter until May 2009. *United States v. Taylor*, Criminal No. 98-0200 ("*Taylor I*"), Docs. 13, 15, 21. Almost immediately upon release he joined the conspiracy from which the charges in this case spring. (Doc. 191 at 1).[3]

The defendant says he is a changed man, and the Court certainly hopes that he is. However, the Court is also aware that the defendant represented to Judge Butler in January 2011 that he "has fulfilled all the conditions of his supervised released [sic]," *Taylor I*, Doc. 21 at 1, even though he has now admitted that, in the months preceding that declaration, he committed numerous violent crimes, including armed robbery, kidnapping, and murder. Absent evidence

---

[3] In January 2011, while in the midst of his most recent violent crime spree, the defendant brazenly moved for an early termination of his term of supervised release, which relief was granted effective May 2011. *Taylor I*, Docs. 21, 22. In August 2011, Judge Butler revoked supervised release and imposed a 60-month sentence, based on his finding that the defendant participated in an armed robbery in May 2011. *Id*., Docs. 41, Doc. 48 at 62-63.

that the defendant is no longer a danger to the safety of the community, which he does not provide, the Court cannot make the required finding.

### IV. Section 3553(a).

The Court imposed a low-end guideline sentence of 360 months on the kidnapping charge. (Doc. 223 at 32; Doc. 232 at 2). None of the defendant's arguments, which address only the other counts, draw into question the appropriateness of that sentence. The concurrent 240-month sentence on Count One is appropriate given, *inter alia*, that the defendant furthered the conspiracy by kidnapping a minor, murdering another person, and threatening to shoot others. The consecutive 120-month sentence on Count Four was and is dictated by statute and is further supported because the defendant's murder of another person under this count subjected him to a punishment of death or of life imprisonment. 18 U.S.C. § 924(j)(1). On the record and argument the defendant has provided, the Court is unpersuaded that a reduced sentence would be consistent with Section 3553(a) even had the defendant demonstrated his eligibility for such relief.

### V. Conclusion.

For the reasons set forth above, the defendant's motion for compassionate release is **denied**.[4]

DONE and ORDERED this 9th day of April, 2024.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[4] The defendant seeks appointment of counsel. (Doc. 286 at 15). "[T]here is no statutory or constitutional right to counsel for a § 3582(c)(2) motion …." *United States v. Webb*, 565 F.3d 789, 795 (11th Cir. 2009). Motions for compassionate release are brought pursuant to Section 3582(c)(1)(A), but the same principle applies. *United States v. Terry*, 2021 WL 3028780 at *1 (11th Cir. 2021). When, as here, the defendant competently sets forth several non-complex but potentially appropriate reasons for relief and supports them with argument and legal authority, a court does not abuse its discretion in not appointing counsel. *Id*. The defendant's request, construed as a motion for appointment of counsel, is thus **denied**.